**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Karay Prinice HUDSON, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 22, 2009.

Filed May 25, 2010.

Eric M. Gibson, Public Defender, Reading, for appellant.

Seth Boer, Asst. Dist. Atty., Reading, for Com., appellee.

BEFORE: MUSMANNO, SHOGAN, JJ. and McEWEN, P.J.E.

OPINION BY MUSMANNO, J.:

¶ 1 Karay Prinice Hudson ("Hudson") appeals from the judgment of sentence entered following his conviction of two counts each of possession of a controlled substance (marijuana and cocaine) and possession of a controlled substance with the intent to deliver (marijuana and cocaine).[1] We vacate the judgment of sentence and remand.

1. 35 P.S. § 780–113(a)(16), (30).

¶ 2 The trial court summarized the facts underlying the instant appeal as follows:

On May 15, 2008, Officer Gonzalez of the Reading Police Department was in full uniform and on routine patrol in a marked patrol car operating in Reading, Berks County. At approximately 11:00 a.m., Officer Gonzalez observed [Hudson] and an unidentified adult male standing outside of a small corner grocery store located at the intersection of Sixth and Franklin Streets. During the course of an hour, Officer Gonzalez passed the intersection three times. Each time [that] Officer Gonzalez passed by in his patrol vehicle, it appeared to Officer Gonzalez that [Hudson] noticed the patrol vehicle and immediately entered the corner grocery store.

The third time [that] Officer Gonzalez drove past the intersection at Sixth and Franklin Streets, he observed [Hudson] and another adult male walking on Franklin Street towards Pearl Street. Officer Gonzalez decided to engage the two men in conversation, so he parked his patrol vehicle at the curb in close proximity to the two men. Officer Gonzalez did not illuminate his overhead lights or use his siren. While still seated in the patrol vehicle, Officer Gonzalez waved his hands to catch [Hudson's] attention and, then, asked to speak with the two men. Officer Gonzalez, who was familiar with the neighborhood but unfamiliar with [Hudson], asked [Hudson] for his name. However, because of traffic noise, Officer Gonzalez could not hear [Hudson's] response. Therefore, he exited his patrol vehicle to continue the conversation with [Hudson] and his companion. After he exited his vehicle, Officer Gonzalez asked whether the two men had identification. In response to the question, [Hudson] and his companion presented Officer Gonzalez with their Pennsylvania Identification Cards.

Officer Gonzalez ran a warrant and scofflaw check on both men. After confirming that the other male did not have any outstanding warrants, Officer Gonzalez told him that he was free to leave. However, [Hudson] had a scofflaw warrant for a summary harassment charge. While waiting for verification that the scofflaw warrant was valid, [Hudson] and Officer Gonzalez engaged in normal conversation. After verifying that the outstanding scofflaw [warrant] was valid, Officer Gonzalez placed [Hudson] under arrest. Incident to the arrest, Officer Gonzalez searched [Hudson's] person and discovered thirty-six bags of crack cocaine, eleven bags of marijuana and $1235.00 in cash.

Trial Court Opinion, 3/20/09, at 2–3 (citations omitted).

¶ 3 Hudson filed a pre-trial Motion to suppress the evidence seized from Hudson, which the trial court denied. Following a jury trial, Hudson was convicted of the above-described charges. For his conviction of possession with intent to deliver marijuana, the trial court sentenced Hudson to a prison term of two to four years. For his conviction of possession with intent to deliver cocaine, the trial court sentenced Hudson to a concurrent prison term of three to ten years. Hudson's remaining convictions merged at sentencing. Hudson filed a Notice of appeal, after which the trial court ordered Hudson to file a concise statement of matters complained of on appeal. Hudson complied with the trial court's Order.

¶ 4 Hudson presents the following claim for our review:

Where the police officer did not observe any evidence of criminal activity and did not have reasonable suspicion to stop or detain [Hudson], did the [trial court] err when it determined that taking and

keeping [Hudson's] identification until he was cleared of any outstanding warrants was not an investigative detention but a mere encounter not requiring reasonable suspicion and therefore not requiring suppression of the contraband subsequently found on [Hudson]?

Brief for Appellant at 4.

¶ 5 Hudson challenges the denial of his pre-trial suppression Motion. Specifically, Hudson claims that Officer Gonzalez effectuated an investigative detention that was not supported by probable cause. *Id.* at 16. In support, Hudson points out that

four distinct acts occurred before Officer Gonzalez searched [Hudson] incident to arrest: (1) Officer Gonzalez's verbal request and nonverbal gesture directing [Hudson] to come toward him; (2) Officer Gonzalez's request for identification, his taking of [Hudson's] identification card and retention of [Hudson's] identification card, (3) his use of it to run a check through [the National Crime Information Center] for any outstanding warrants and [he] informed the men to wait until their names were cleared; and (4) Officer Gonzalez's instruction to [Hudson's] companion that he was free to leave after having been cleared for any outstanding warrants.

*Id.* at 15 (citing N.T. (Suppression Hearing), 9/22/08, at 10–13, 26, 39).

¶ 6 "Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.... [W]e must consider only the evidence of

the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole." *Commonwealth v. Eichinger,* 591 Pa. 1, 915 A.2d 1122, 1134 (2007). Those properly supported facts are binding upon us and we "may reverse only if the legal conclusions drawn therefrom are in error." *Id.*

¶ 7 The Fourth Amendment to the United States Constitution[2] protects the people from unreasonable searches and seizures. *In the Interest of D.M.,* 566 Pa. 445, 781 A.2d 1161, 1163 (2001).

Fourth Amendment jurisprudence has led to the development of three categories of interactions between citizens and the police. The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Pakacki,* 587 Pa. 511, 901 A.2d 983, 987 (2006) (quoting *Commonwealth v. Ellis,* 541 Pa. 285, 662 A.2d 1043, 1047 (1995) (parallel citations and footnote omitted)).

¶ 8 The Commonwealth argues that there are no facts that would support a conclusion that the interaction between Officer Gonzalez and Hudson escalated from

---

**2.** *See* U.S. Const. amend. IV (providing that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but

upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.").

a mere encounter to an investigative detention. Brief for the Commonwealth at 8. The Commonwealth points out that the officer did not inform Hudson that he suspected Hudson of criminal activity. *Id.* In addition, the Commonwealth states that at no time did Officer Gonzalez restrict the movements of Hudson and his companion, nor did he prevent them from walking away. *Id.* at 8–9. The Commonwealth directs our attention to the Pennsylvania Supreme Court's holding in *Commonwealth v. Boswell*, 554 Pa. 275, 721 A.2d 336 (1998) (plurality), in support.

¶ 9 In *Boswell*, the defendant was arrested after an encounter with police officers operating a drug interdiction program at an airport. *Id.* at 338–39. The trial court granted the defendant's pre-trial suppression motion. *Id.* at 339. On appeal, this Court reversed the grant of defendant's suppression motion. *Commonwealth v. Boswell*, 451 Pa.Super. 619, 679 A.2d 249 (1996).

■ ¶ 10 The Pennsylvania Supreme Court granted allowance of appeal, after which three of the six participating justices of a divided Supreme Court of Pennsylvania held that no investigatory stop implicating the Fourth Amendment or Pa. Const. art. I, § 8, had occurred. *Boswell*, 721 A.2d at 343. In reaching this conclusion, the Pennsylvania Supreme Court stated the following:

> The United States Supreme Court has stated that "the Fourth Amendment permits police officers to approach individuals at random in airport lobbies and other public places to ask them questions and to request consent to search their luggage, so long as a reasonable person would understand that he or she could refuse to cooperate." *Florida v. Bostick*, 501 U.S. 429, 431, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Consequently, not every encounter is so intru-

sive so as to trigger constitutional protections. *Terry v. Ohio*, 392 U.S. 1, 20, n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *In the Interest of Jermaine*, 399 Pa.Super. 503, 582 A.2d 1058 (1990), *allocatur denied*, 530 Pa. 643, 607 A.2d 253 (1992). It is only when the officer, by means of physical force, or by displaying or asserting authority, restrains the liberty of the citizen that a "seizure" occurs. *Terry*, at 20, n. 16 [88 S.Ct. 1868]. " 'Any curtailment of a person's liberty by the police must be supported at least by a reasonable and articulable suspicion that the person seized is engaged in criminal activity.' " *Commonwealth v. Lewis*, 535 Pa. 501, 636 A.2d 619 (1994) (quoting *Reid v. Georgia*, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980)).

*Boswell*, 721 A.2d at 340. The Supreme Court summarized the above into the following objective test: "[A] court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Id.* (citation omitted). The Supreme Court then applied this "free to decline" test to the circumstances of the defendant's encounter with the police.

¶ 11 In *Boswell*, the police encounter with the defendant occurred in a public airport, where the United States Supreme Court has said an individual has a diminished expectation of privacy under the Constitution. *Id.* at 343; *see also Florida v. J.L.*, 529 U.S. 266, 274, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) (recognizing that there is a diminished expectation of privacy at a public airport and citing *Florida v. Rodriguez*, 469 U.S. 1, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984) (*per curiam*)). The Supreme Court noted that the officers

were in plain clothes, did not visibly display weapons, did not inform the defendant she was suspected of criminal activity or that they were involved in a drug-interdiction effort, and did not physically block her path or surround or intimidate her in any way that coerced her consent or would have indicated to a reasonable person she was not free to leave. *Boswell,* 721 A.2d at 343. Based upon these circumstances, the Supreme Court concluded that a reasonable person would have felt free to decline to answer the officers' questions and go about his or her business. *Id.* Accordingly, the Supreme Court deemed this interaction a "mere encounter," and concluded that the Superior Court properly reversed the grant of the defendant's suppression motion. *Id.*

¶ 12 In the present case, viewing the totality of the circumstances, we observe the following. Officer Gonzalez testified that while driving in his marked police vehicle, he observed Hudson and a man standing at the corner of Sixth and Franklin Streets in Reading. N.T. (Suppression Hearing), 9/22/08, at 7. The men were holding cell phones and appeared to be exchanging telephone numbers. *Id.* at 6. When Hudson and the other man saw Officer Gonzalez, they went into a nearby grocery store. *Id.* at 7. During the course of the next hour, Officer Gonzalez drove past the store an additional second and third time. *Id.* at 7–8. The second time that Officer Gonzalez drove past, he observed Hudson with a different man. *Id.* at 8. The men saw Officer Gonzalez and went back into the store. *Id.* On the third occasion, Officer Gonzalez observed Hudson with yet a different man. *Id.* This time, Officer Gonzalez saw the men exit the store and walk west on Franklin Street. *Id.* at 9.

¶ 13 Officer Gonzalez parked his police cruiser along side of the two men, as they walked down the street. *Id.* Officer Gonzalez then motioned to the two men and asked if he could speak to them. *Id.* at 10. Hudson and his companion approached the passenger side door of Officer Gonzalez's vehicle. *Id.* at 11. Officer Gonzalez acknowledged that he was suspicious that criminal activity was afoot based upon Hudson's going into and out of a store without buying anything and because he was meeting different people for over an hour. *Id.*

¶ 14 Officer Gonzalez asked the two men where they were from, but because of traffic, could not hear their answers. *Id.* at 12. At that time, Officer Gonzalez asked if the men would mind if he got out of his vehicle. *Id.* The men responded in the negative. *Id.* Officer Gonzalez approached the men and requested identification. *Id.* There is no evidence that Officer Gonzalez informed the men that they were free to decline or to leave the scene.

¶ 15 Hudson gave Officer Gonzalez his Pennsylvania identification card. *Id.* The man with Hudson asked if Officer Gonzalez also wanted to see his identification, and then provided it to Officer Gonzalez upon request. *Id.* Officer Gonzalez took the men's identification into his police cruiser and checked to see if the men had any outstanding warrants. *Id.* Upon discovering an outstanding scofflaw warrant for Hudson, Officer Gonzalez asked the operator to check and see if the warrant remained valid. *Id.* at 13. While this check was being conducted, Officer Gonzalez continued talking with Hudson. *Id.* Once the operator confirmed the validity of the warrant, Officer Gonzalez took custody of Hudson. *Id.*

¶ 16 Hudson testified that when he provided his identification to Officer Gonzalez, Officer Gonzalez "ran my name through the NCIC and he also informed me that I had to wait until my name came through."

*Id.* at 39. This testimony was not contradicted. In addition, Hudson testified that Officer Gonzalez informed Hudson's companion that he was free to leave after the companion's NCIC check. *Id.* Officer Gonzalez confirmed that he told Hudson's companion that he was free to leave. *Id.* at 13.

¶ 17 The record, when viewed in a light most favorable to the Commonwealth, establishes that Officer Gonzalez effectuated an investigative detention of Hudson at the time that Officer Gonzalez took and maintained possession of Hudson's identification. In such a situation, no reasonable person would have felt free to terminate the encounter and depart the scene. Further, the evidence fails to establish that Officer Gonzalez had a reasonable and articulable suspicion that Hudson was engaged in criminal activity. At best, Officer Gonzalez had observed Hudson meeting with three men and walking into and out of a grocery store, all of which are lawful activities.

¶ 18 With no reasonable and articulable suspicion to suspect Hudson of criminal activity, we conclude that Officer Gonzalez's investigative detention of Hudson was constitutionally infirm. Because the investigative detention of Hudson was unlawful, the trial court erred in denying Hudson's Motion to suppress the evidence seized as a result of Hudson's illegal detention. On this basis, we vacate the judgment of sentence, and remand for further proceedings, including a new trial or discharge of Hudson.

¶ 19 Judgment of sentence vacated; case remanded for further proceedings; Superior Court jurisdiction relinquished.