**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Alexis GUZMAN, Appellee.**

Superior Court of Pennsylvania.

Submitted Oct. 24, 2911.

Filed April 30, 2012.

Stefanie J. Salavantis, Assistant District Attorney, Wilkes–Barre, for Commonwealth, appellant.

Joseph J. Yeager, Forty Fort, for appellee.

BEFORE: STEVENS, P.J., MUSMANNO, J., and GANTMAN, J.

OPINION BY GANTMAN, J.:

The Commonwealth of Pennsylvania appeals from the order entered in the Luzerne County Court of Common Pleas, granting Appellee's motion to suppress. After review, we hold the court erred when it suppressed the evidence at issue because: (1) the preliminary interaction between Appellee and Officer Wetzel was a mere encounter only; (2) Officer Wetzel's subsequent decision to conduct a frisk for weapons was justified under the circumstances; and (3) Officer Wetzel lawfully seized the drugs inside the SUV as contraband found in plain view. Accordingly, we reverse the order suppressing the evidence and remand for further proceedings.

The relevant facts and procedural history of this case are as follows. Officer Kirk Wetzel of the Hazelton City Police was patrolling in a high crime area[1] in Hazelton around 2:30 a.m. on March 10, 2010, when he saw a dark SUV make a right turn from Chestnut Street onto Bennett Street. About a minute later, Officer Wetzel noticed a man walk from the direction where the SUV had turned into an apartment on Bennett Street. Officer Wetzel watched the man enter the building. Officer Wetzel then drove down Bennett Street, where he saw the SUV parked with its headlights on in a private driveway. Officer Wetzel pulled his patrol car behind the SUV and illuminated the car with his spotlight. As Officer Wetzel approached the vehicle, he saw a man in the passenger's seat turn and lean forward. Officer Wetzel was walking alongside the SUV when Appellee suddenly jumped out of the vehicle, leaving the door open and setting off the car alarm. Appellee fumbled in his pockets to find the car key and deactivated the alarm. Officer Wetzel ordered Appellee to keep his hands out of his pockets, but Appellee continued to reach inside his pants and yelled, "I'm not going down for this" and "It's not mine." After his initial non-compliance, Appellee obeyed the officer's commands to calm down and stay still. At this point, Officer Wetzel handcuffed Appellee and patted him down but found no weapons. Officer Wetzel walked back to the open passenger door of the SUV, looked in, and noticed suspected heroin and bags of marijuana on the floor sticking out from beneath the seat. Officer Wetzel described the drugs as small white folded-over wax paper bags in another plastic bag. (N.T. Suppression Hearing, 11/12/10, at 13–15). Based on his training, Officer Wetzel suspected the

white substance was heroin because heroin is often packaged in that manner. There were also four bags of suspected marijuana. (*Id.*) The substances were later confirmed as heroin and marijuana. Upon Officer Wetzel's discovery, Appellee renewed his objections that he "[was] not going down for this" and claimed "it's not mine"; but he was nevertheless placed under arrest. A search of Appellee incident to arrest produced two cell phones and $1,014.80 in cash.

The Commonwealth charged Appellee with possession with intent to deliver and other drug-related offenses. Appellee filed a motion to suppress the items seized from both his person and the SUV as well as the statements he had made to Officer Wetzel at the time of the incident. On November 12, 2010, the court heard testimony from Officer Wetzel and argument on the motion. Ultimately, the court found Officer Wetzel lacked the necessary justification to pull his car behind the SUV and approach the vehicle, and learned no new facts after Appellee jumped out of the SUV, to authorize a *Terry* frisk.[2] By order dated March 24, 2011, the court suppressed Appellee's statements and all physical evidence as the product of an illegal detention. On April 8, 2011, the Commonwealth timely filed a notice of appeal.

The Commonwealth raises one issue for our review:

> DID THE SUPPRESSION COURT ERR BY SUPPRESSING EVIDENCE OBTAINED FOLLOWING SEARCHES OF APPELLEE AND HIS VEHICLE?

(Commonwealth's Brief at 4).

 When the Commonwealth appeals an order suppressing evidence, we

---

1. A murder, a shooting, as well as several robberies and home invasions had occurred in that area during the preceding year.

2. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

may consider on review only the evidence from the defendant's witnesses along with the Commonwealth's evidence that remains uncontroverted. *Commonwealth v. Brown,* 606 Pa. 198, 203, 996 A.2d 473, 476 (2010). "Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions." *Id.*

The Commonwealth disagrees with the court's suppression ruling on several grounds. Initially, the Commonwealth argues the preliminary interaction between Officer Wetzel and Appellee was nothing more than a mere encounter, which required no justification. The Commonwealth asserts Officer Wetzel's act of simply walking up to the SUV was consistent with the informal nature of a mere encounter between police and ordinary citizens. Additionally, the Commonwealth avers Officer Wetzel was justified in conducting a pat down search of Appellee based on the facts presented to Officer Wetzel: Appellee jumped out of an SUV in a high crime area and reached into his pockets while simultaneously screaming, "I'm not going down for this." These facts created a reasonable concern for officer safety that justified the limited intrusion of a pat down search. Regarding the drugs found in the front seat of the SUV, the Commonwealth argues Officer Wetzel was justified in seizing those items under the plain view doctrine. Because the SUV door was open, Officer Wetzel was lawfully present at the scene, the items were immediately apparent to Officer Wetzel as suspected contraband. The Commonwealth contends the plain view doctrine allowed Officer Wetzel to reach inside the SUV and seize the drugs. For these reasons, the Commonwealth concludes the court erred in suppressing the evidence. We agree.

" 'Interaction' between citizens and police officers, under search and seizure law, is varied and requires different levels of justification depending upon the nature of the interaction and whether or not the citizen is detained." *Commonwealth v. DeHart,* 745 A.2d 633, 636 (Pa.Super.2000). The three levels of interaction are mere encounter, investigative detention, and custodial detention. *Id.* "A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen." *Commonwealth v. Coleman,* 19 A.3d 1111, 1115 (Pa.Super.2011). A mere encounter does not carry any official compulsion to stop or respond to police, and as a result, does not need to be supported by any level of suspicion. *Commonwealth v. Hudson,* 995 A.2d 1253, 1256–57 (Pa.Super.2010). *See also Commonwealth v. Reid,* 571 Pa. 1, 26, 811 A.2d 530, 545 (2002), *cert. denied,* 540 U.S. 850, 124 S.Ct. 131, 157 L.Ed.2d 92 (2003) (quoting *Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 236 (1983)) (stating: "Law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions"). In contrast, an investigative detention carries an official compulsion to stop and respond. *Commonwealth v. Jones,* 874 A.2d 108, 116 (Pa.Super.2005). The detention is temporary, but it must be supported by specific and articulable facts creating a reasonable suspicion that the suspect is engaged in criminal activity. *Commonwealth v. Cottman,* 764 A.2d 595, 598 (Pa.Super.2000). The test for reasonable suspicion is an objective one: "Our inquiry is a dual one—whether the officer's action

was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. Regarding the stop, a police officer may, short of an arrest, conduct an investigative detention if he has a reasonable suspicion, based upon specific and articulable facts, that criminality is afoot." *Commonwealth v. Stevenson*, 894 A.2d 759, 771 (Pa.Super.2006), *appeal denied*, 591 Pa. 691, 917 A.2d 846 (2007) (quoting *Commonwealth v. Zhahir*, 561 Pa. 545, 552, 751 A.2d 1153, 1156 (2000)). The assessment of reasonable suspicion, "like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability." *Id.* at 552, 751 A.2d at 1156–57. Finally, an arrest or "custodial detention" must be supported by probable cause. *Commonwealth v. Bryant*, 866 A.2d 1143, 1146 (Pa.Super.2005), *appeal denied*, 583 Pa. 668, 876 A.2d 392 (2005).

 "To determine if an interaction rises to the level of an investigative detention, *i.e.*, a *Terry* stop, the court must examine all the circumstances and determine whether police action would have made a reasonable person believe he was not free to go and was subject to the officer's orders." *Jones, supra.* To guide this crucial analysis, the United States Supreme Court has devised an objective test entailing whether, in view of all surrounding circumstances, a reasonable person would believe he was free to leave. *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). "In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained." *Common-*

*wealth v. Strickler*, 563 Pa. 47, 58–59, 757 A.2d 884, 890 (2000). No single factor should control this determination, and courts must examine the totality of the circumstances when reaching a conclusion as to whether a seizure occurred. *Id.*

██ In the present case, Officer Wetzel was in his patrol car in a high crime area in Hazelton when he observed a dark SUV make a right hand turn on Bennett Street. The SUV parked with its headlights on in a private driveway, and Officer Wetzel saw a man walk from the direction of the SUV into an apartment building. Officer Wetzel pulled his patrol car into a parking spot behind the SUV and illuminated his spotlight. The spotlight allowed Officer Wetzel to see a man in the passenger seat who appeared to be fidgeting and moving around in the seat. When Officer Wetzel walked up to the SUV, Appellee spontaneously jumped out of the vehicle, setting off the car alarm and leaving the passenger door open.

On these facts, the suppression court determined an investigative detention had occurred when Officer Wetzel parked behind the SUV and approached the vehicle. The court noted Officer Wetzel had not seen, observed, or received any indication of criminal activity when he approached the SUV. Instead, the court concluded the mere incident of an SUV turning from one street to another and parking with its headlights on in a private driveway did not create reasonable suspicion necessary to justify an investigative detention. (*See* Suppression Court Opinion, filed April 29, 2011, at 5). The court's conclusion here is misguided because the initial interaction was limited, informal, and thus did not need to be supported by any level of justification. In simply parking behind a vehicle that was already stopped and approaching it, Officer Wetzel did not display the type of physical force or show of au-

thority necessary to rise to the level of an investigative detention.[3] A reasonable person in Appellee's situation would not necessarily feel restrained by police or unable to leave, especially in light of the fact that Officer Wetzel had yet to speak to Appellee or give him any commands. Appellee spontaneously jumped out of the SUV. Officer Wetzel had shown no force or issued any command to support the court's conclusion that a seizure had instantly occurred. *See Commonwealth v. McClease,* 750 A.2d 320, 324–25 (Pa.Super.2000) (quoting *Mendenhall, supra* ) (providing examples of conduct creating investigative detention, such as "threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled").

Instead, the officer's actions thus far carried all the hallmarks of a mere encounter. Officer Wetzel needed no justification to park behind the SUV and approach it; as a police officer, he is entitled to approach ordinary citizens on the street and ask a few questions. *See Reid, supra.* Had Officer Wetzel demonstrated a greater show of force or authority in approaching the SUV, our analysis might be different, but the facts presented at the suppression hearing do not support a finding of force or official police detention. Given there was no compulsion from Officer Wetzel when Appellee jumped from the SUV, Officer Wetzel's actions constituted a mere encounter that required no justification. *See Hudson, supra.*

 The interaction began as a mere encounter, but it escalated to an investigative detention when Officer Wetzel held Appellee and conducted a pat down for weapons. The issue therefore becomes whether Officer Wetzel possessed the requisite suspicion to support the detention and pat down. Appellee's actions both inside and outside the SUV justified the stop and frisk. While Officer Wetzel was approaching the SUV, he saw Appellee twisting and turning in the front seat of the SUV, as if he were moving something under the seat. Appellee then jumped out of the SUV and yelled, "I'm not going down for this" and "It's not mine." Simultaneous with his cries of innocence, Appellee appeared nervous and reached into his pockets, despite Officer Wetzel's request for Appellee to keep his hands where the officer could see them. At this point, Officer Wetzel was faced with a person behaving erratically, late at night, in a high crime area, who continued to plunge purposefully into his pockets. The record shows Appellee's actions gave rise to reasonable concern for officer safety that justified Officer Wetzel's decision to detain Appellee briefly and perform a pat down search. *See Commonwealth v. Mack,* 953 A.2d 587, 590 (Pa.Super.2008) (stating: "If, during the course of a valid investigatory stop, an officer observes unusual and suspicious conduct on the part of the individual which leads him to reasonably believe that the suspect may be armed and dangerous, the officer may conduct a pat-down of the suspect's outer garments for weapons"). *See also Commonwealth v. Parker,* 957 A.2d 311, 315 (Pa.Super.2008), *appeal denied,* 600 Pa. 755, 966 A.2d 571 (2009) (stating police officer possessed specific and articulable facts that suspect might be armed and dangerous because suspect was leaning down in seat of car as if he was trying to retrieve something); *Commonwealth v. Wilson,* 927 A.2d 279, 284–85 (Pa.Super.2007) (holding police articulated

---

**3.** Nothing of record demonstrates that Officer Wetzel parked his patrol car in a way to "box in" the SUV or restrict its freedom of movement or exit.

specific facts creating risk of officer safety and justifying *Terry* frisk where suspect was engaging in suspicious gestures and movements, and also placing his hands inside coat pockets); *Commonwealth v. Mesa*, 453 Pa.Super. 147, 683 A.2d 643, 646 (1996) (concluding officer provided requisite facts to support belief that defendant might be armed and dangerous where police observed defendant "moving around a great deal" in the passenger seat). Officer Wetzel took necessary measures to determine whether Appellee was armed and to neutralize the threat of physical harm. *See Stevenson, supra* at 772 (noting common sense concerns must give preference to officer safety when circumstances indicate defendant may have or be reaching for weapon). Consequently, the pat down was proper, and the suppression court erred when it concluded an illegal detention had occurred. Because the cash, cell phone, and Appellee's statements[4] were not the product of an illegal detention, the court improperly suppressed that evidence.

▋ Turning to the drugs discovered in the front seat, Officer Wetzel was justified in seizing them, under the plain view doctrine. *See Commonwealth v. Brown*, 23 A.3d 544, 551–52 (Pa.Super.2011) (*en banc*) (citing *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)) (stating plain view doctrine allows warrantless seizure of items when: (1) police observe item from lawful vantage point; (2) incriminating nature of item is immediately apparent; and (3) police have lawful right of access to object). Here, Officer Wetzel was in a lawful vantage point outside the SUV. Because Appellee had left the door open when he voluntarily jumped out of the car, Officer Wetzel

needed only to stand outside the car and look inside. The drugs in question were located in a transparent package on the floor, sticking out from beneath the passenger seat; and Officer Wetzel immediately recognized the contents as illegal narcotics. Officer Wetzel also had a lawful right of access to the baggies under Pennsylvania's limited auto exception because, prior to approaching the car, Officer Wetzel did not have advance knowledge that Appellee's SUV was involved in a crime. *See Commonwealth v. Collins*, 950 A.2d 1041, 1045 n. 4 (Pa.Super.2008) (citing *Commonwealth v. McCree*, 592 Pa. 238, 249–51, 924 A.2d 621, 628–29 (2007) (Eakin, J., plurality)) (stating officer has lawful access to retrieve object from interior of vehicle without warrant when officer had no advance knowledge that vehicle was involved in crime); *Commonwealth v. Turner*, 982 A.2d 90, 94 (Pa.Super.2009), *appeal denied*, 606 Pa. 649, 992 A.2d 889 (2010) (holding officer had right to access inside of vehicle and seize item in plain view because there was no advance warning that defendant or car would be target of police investigation). Therefore, Officer Wetzel satisfied all three prongs of *Brown* and *Horton*, and was entitled to seize the baggies.

The legality of the intervening *Terry* frisk is immaterial to our analysis on this point because Officer Wetzel saw the drugs in plain view from an area where he was lawfully present. The door to the SUV was wide open, and Officer Wetzel could see the drugs in plain view regardless of the pat down of Appellee. The evidence found inside the vehicle was not automatically the product of a detention where the discovery of the drugs was independent of the pat down. Instead, we

---

4. The statements suppressed were those Appellee repeatedly yelled out after jumping out of the SUV—"I'm not going down for this," "It's not mine," and any other remarks he made at that time.

conclude Officer Wetzel properly seized the drugs as incriminating evidence found in plain view.

Based on the foregoing, we hold the court erred when it suppressed the evidence at issue because: (1) the preliminary interaction between Appellee and Officer Wetzel was a mere encounter only; (2) Officer Wetzel's subsequent decision to conduct a frisk for weapons was justified under the circumstances; and (3) Officer Wetzel properly seized the drugs inside the SUV as contraband found in plain view. Accordingly, we reverse the order suppressing the evidence and remand for further proceedings.

Order reversed; case remanded for further proceedings. Jurisdiction is relinquished.

*JUDGE MUSMANNO FILES A DISSENTING OPINION.

DISSENTING OPINION BY MUSMANNO, J.:

Because the evidence presented at the suppression hearing supports the ruling of the suppression court, and its legal conclusions are sound, I must respectfully dissent. The evidence supports the suppression court's conclusion that Officer Wetzel effectuated an investigative detention of Alexis Guzman ("Guzman"), which was not supported by reasonable suspicion of criminal activity.

At 2:30 a.m. on March 10, 2010, Officer Wetzel observed a Sports Utility Vehicle ("SUV") traveling in a high crime area. N.T., 11/12/10, at 6–7, 20. Officer Wetzel next observed a man walk past, traveling in the same direction, who then entered an apartment. Id. at 7. As the suppression court stated in its Opinion, "[t]he officer did not see any illegal or unusual actions on the part of either the SUV or the individual who walked into the apartment building." Suppression Court Opinion, 4/29/11, at 2. Officer Wetzel drove in the direction taken by the SUV, and saw the SUV parked in a private driveway, with its headlights on. N.T., 11/12/10, at 7.

Notwithstanding the fact that Officer Wetzel had observed no criminal activity or unusual actions on the part of the SUV or the individual, he parked in the private driveway, behind the SUV. Id. From his marked police vehicle, Officer Wetzel then illuminated the SUV with a spot light. Id. at 9. At that time, the passenger inside of the vehicle, Alexis Guzman ("Guzman"), turned around and discovered a marked police vehicle, parked in the private driveway behind the SUV. Id. at 8. When Officer Wetzel saw the Guzman fidgeting, he approached the vehicle, at which time Guzman jumped out, setting off the car alarm. Id. at 9.

Unlike the Majority, I cannot conclude, based upon the above testimony, that Officer Wetzel's initial contact with Guzman was a "mere encounter." The Majority opines that Officer Wetzel needed no justification to park behind the SUV and approach it, as he is entitled to approach ordinary citizens **"on the street"** and ask a few questions. Slip Opinion at 9. The record reflects, however, that Officer Wetzel did not approach Guzman on the street. Officer Wetzel parked his marked police car behind the SUV, in a *private driveway,* and illuminated the SUV with a spotlight. No reasonable person would feel free to leave under these circumstances.

In addition, Officer Wetzel admitted that he did not observe any criminal activity by the SUV or the person walking on the street, prior to parking behind the SUV.

N.T., 11/12/10, at 23. Officer Wetzel also admitted that when he saw Guzman in the SUV, the officer saw no drugs, no weapons, and no indication that there were drugs and/or weapons. *Id.* at 29. Nevertheless, Officer Guzman approached the SUV. *Id.* When Guzman exited the vehicle, and deactivated its alarm, Officer Wetzel ordered Guzman to the back of the vehicle, where the officer handcuffed Guzman. *Id.* at 12, 33. Even though a pat-down search revealed no evidence of criminal activity, Officer Wetzel again approached the SUV, in the private driveway, and looked inside, discovering contraband under the seat *Id.* at 13, 34.

I also cannot agree with the Majority's conclusion that the contraband falls within the ambit of the plain view doctrine. Officer Wetzel's initial contact with Guzman cannot be considered a "mere encounter," when the officer parked his marked police vehicle behind the SUV, in a private driveway, illuminating it with a spotlight. Further, a reasonable person would not have felt free to leave when Officer Wetzel approached the vehicle. Thus, when Officer Wetzel approached the vehicle, he did not view the contraband inside from a legal vantage point. For these reasons, I would uphold the suppression court's ruling, as its findings are supported in the record and its legal conclusions are sound.