J-S60033-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| SHAKEEM RICE, | : | |
| | : | |
| Appellant | : | No. 3352 EDA 2015 |

Appeal from the Judgment of Sentence Entered October 29, 2015
in the Court of Common Pleas of Philadelphia County,
Criminal Division, at No(s): CP-51-CR-0003870-2015

BEFORE: SHOGAN, OTT, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.: **FILED OCTOBER 19, 2016**

Shakeem Rice (Appellant) appeals from the October 29, 2015 judgment of sentence of 11 ½ to 23 months of incarceration and three years of probation imposed following his convictions for carrying a firearm without a license, carrying a firearm on public streets of Philadelphia, and possession of a firearm by a person not to possess. On appeal, Appellant challenges the denial of his pre-trial suppression motion. After careful review, we affirm.

The trial court offered the following factual and procedural history of the case.

> The evidence established that on March 28, 2015, at approximately 11:55 a.m., Philadelphia Police Officer [Jonathan] Sweeney and an unidentified partner were in full uniform, on foot patrol on the 2100 block of S. Cemetery Road because of a recent spike in residential daytime burglaries when they observed three males loitering around a corner business that Officer Sweeney knew was closed for the season. The three men turned their heads toward the officers and began walking. As

*Retired Senior Judge assigned to the Superior Court.

they were walking toward them, Officer Sweeney observed [Appellant] adjust an object at his waist, right below his belt buckle. Officer Sweeney stopped the three males and asked for identification. In order to expedite the encounter, Officer Sweeney flagged a patrol car to check the validity of the identifications the men gave him. As he looked back, he noticed [Appellant] adjust the object in his waistband again.

Officer Sweeney further testified that one of the males (later identified as Azer (ph)) would not look at the officers; he only stared at the ground. The other male (not identified by name) seemed very nervous and was "swaying back and forth." At this time, Officer Sweeney ordered all three males to place their hands on the fence and he frisked them. Officer Sweeney felt the barrel of a gun in the area where he observed [Appellant] adjusting something. Officer Sweeney pulled a .22 caliber H&R revolver gun from [Appellant's] waist area and he was arrested. [Appellant] did not have a license to carry a gun.

[Appellant] filed a Motion to Suppress which was heard and denied by the Honorable Vincent N. Melchiorre on August 27, 2015. A waiver trial immediately followed and [Appellant] was found guilty of all charges. [Appellant] filed a notice of appeal to [this Court]. Following receipt of the notes of testimony, [Appellant] was ordered to file a Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. Rule 1925(b). A Statement of Matters Complained of on Appeal was filed on January 4, 201[6].

Trial Court Opinion, 1/29/2016, at 1-3 (footnotes and citations omitted).

Appellant presents one issue for this Court's review:

Did the lower court err in denying [A]ppellant's motion to suppress physical evidence as the officer who stopped, frisked, and arrested [A]ppellant merely saw [A]ppellant standing on a public sidewalk and make a motion with his hands at his waistband and, thus, did not possess the requisite reasonable suspicion that [A]ppellant was involved in criminal activity to justify the stop?

Appellant's Brief at 3 (trial court answer omitted).

J-S60033-16

We consider Appellant's question mindful of the following.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the court[] below are subject to our plenary review.

*Commonwealth v. Perel*, 107 A.3d 185, 188 (Pa. Super. 2014) (quoting *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010)). "Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress." *Commonwealth v. Stilo*, 138 A.3d 33, 35–36 (Pa. Super. 2016).

The following principles guide our review if this matter.

> Interaction between citizens and police officers, under search and seizure law, is varied and requires different levels of justification depending upon the nature of the interaction and whether or not the citizen is detained. The three levels of interaction are mere encounter, investigative detention, and custodial detention. A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. A mere encounter does not carry any official compulsion to stop or

- 3 -

respond to police, and as a result, does not need to be supported by any level of suspicion. In contrast, an investigative detention carries an official compulsion to stop and respond. The detention is temporary, but it must be supported by specific and articulable facts creating a reasonable suspicion that the suspect is engaged in criminal activity. The test for reasonable suspicion is an objective one: … whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. Regarding the stop, a police officer may, short of an arrest, conduct an investigative detention if he has a reasonable suspicion, based upon specific and articulable facts, that criminality is afoot. The assessment of reasonable suspicion, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability. Finally, an arrest or custodial detention must be supported by probable cause.

To determine if an interaction rises to the level of an investigative detention, *i.e.*, a ***Terry***[1] stop, the court must examine all the circumstances and determine whether police action would have made a reasonable person believe he was not free to go and was subject to the officer's orders. To guide this crucial analysis, the United States Supreme Court has devised an objective test entailing whether, in view of all surrounding circumstances, a reasonable person would believe he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. No single factor should control this determination, and courts must examine the totality of the circumstances when reaching a conclusion as to whether a seizure occurred.

***Commonwealth v. Guzman***, 44 A.3d 688, 692-93 (Pa. Super. 2012)

(internal citations and quotation marks omitted).

---

[1] ***Terry v. Ohio***, 392 U.S. 1 (1968).

Appellant first argues that his interaction with the police was, from the start, an investigative detention: "[t]he uniformed police officer subjected [A]ppellant to an investigative detention and subsequent [*Terry*] frisk, when he ordered him to stop and asked him for identification. As the officer did not have the requisite reasonable suspicion to support the initial stop, the frisk, and subsequent arrest, was [*sic*] also illegal." Appellant's Brief at 10.

The trial court[2] determined that Officer Sweeney's request for Appellant's identification was a mere encounter. Specifically, in finding the police were allowed to ask for identification without the encounter becoming an investigative detention, the court found that Officer Sweeney's request for identification was not accompanied with a "compulsion for these males to stay and give identification[.]" Trial Court Opinion, 1/29/2016, at 5-6.

We disagree with the trial court's legal conclusion. Specifically, we find the following excerpts from the suppression hearing pertinent to our disposition.

[The Commonwealth:] What did you do after you observed this?

[Officer Sweeney:] After I observed him adjust something below his belt buckle, we stopped him for investigation of the daytime burglaries. At that point we pulled a car over to run the names faster, and then when the car came, I drew my attention to their car. I looked back, and he adjusted something below his belt buckle again.

---

[2] Because the judge who presided over Appellant's suppression hearing and waiver trial was no longer a sitting judge, the Rule 1925(a) opinion before us was authored by the Honorable Jeffrey P. Minehart.

N.T., 8/27/2015, at 11.

> [Defense Counsel:] You actually ordered all three people to stop, correct?
>
> [Officer Sweeney:] Yes.
>
> [Defense Counsel:] You were holding them until you could run the IDs, correct?
>
> [Officer Sweeney:] Yes.

*Id.* at 21.

Despite the protestations of the Commonwealth and trial court to the contrary, we find no evidence to support the court's finding that "[t]he request for identification was not accompanied by physical restraint, manifestation of authority, or a mandate to comply." Trial Court Opinion, 1/29/2016, at 6. The suppression hearing transcript does not support the notion that compliance with the request for identification was voluntary, especially considering Officer Sweeney answered in the affirmative when questioned if he ordered Appellant and his cohorts to stop. Notably, Officer Sweeney testified Appellant was stopped for an "investigation." The Commonwealth did not elicit additional context for the officer's answers, and we do not accept an invitation to presume what the officer intended to communicate at the hearing. Under these circumstances, we do not find that Officer Sweeney's initial encounter with Appellant was a mere encounter. Rather, it was an investigative detention.

However, our analysis does not end there because we may affirm on any basis. *See Commonwealth v. Clouser*, 998 A.2d 656, 661, n.3 (Pa. Super. 2010) ("It is well-settled that this Court may affirm on any basis").

Therefore, we now review the record to determine if Officer Sweeney possessed the requisite reasonable suspicion needed to stop Appellant lawfully.

> [A]n "investigative detention," by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction has elements of official compulsion it requires "reasonable suspicion" of unlawful activity.

*Commonwealth v. DeHart*, 745 A.2d 633, 636 (Pa. Super. 2000).

> An investigative detention, unlike a mere encounter, constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution. To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot. Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was appropriate.

*Commonwealth v. Stevenson*, 832 A.2d 1123, 1127 (Pa. Super. 2003) (some citations omitted).

After a thorough review, we find Officer Sweeney possessed reasonable suspicion to stop Appellant. As testified by Officer Sweeney, he and his partner were on foot patrol in a high-crime area due to an increase in daytime burglaries in the neighborhood. N.T., 8/27/2016, at 7. Seeing

Appellant and two other individuals loitering outside a business the officer knew was closed for the season, he and his partner began to walk towards them. *Id.* at 8-10. The three men noticed the officers and began walking. *Id.* at 10. While walking, Officer Sweeney observed Appellant adjust "something below his belt buckle." *Id.* at 11. Aware based on his police training that firearms are often concealed in this area,[3] Officer Sweeney stopped the three men to inquire further. *Id.*

We find the totality of the circumstances and the facts as relayed by Officer Sweeney provided him the requisite reasonable suspicion necessary to initiate a stop. *See Commonwealth v. Zhahir*, 751 A.2d 1153, 1157 (Pa. 2000) ("[*Illinois v. Wardlow,* 120 S.Ct. 673, 676, (2000), explained] that an area of expected criminal activity is a relevant contextual consideration, as is nervous or evasive behavior, in determining reasonable suspicion[.] [In *Zahir*, police were able to corroborate an anonymous call received when the officer] was confronted with an individual whose actions appeared to be consistent with retrieval of a weapon from his pocket. In light of the totality of this information, the officers were justified in conducting an investigative detention."). *See also Commonwealth v. Foglia*, 979 A.2d 357, 361 (Pa. Super. 2009) (some citations omitted) ("[R]easonable suspicion is based upon an objective standard, not subjective

---

[3] Officer Sweeney testified that "[i]n defense tactics, we were trained to always watch the hands and that weapons are commonly placed in the waistband area." N.T., 8/27/2015, at 19.

intent. As the United States Supreme Court noted in *Maryland v. Macon*, [472 U.S. 463, (1985)], "Whether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' *Scott v. United States*, 436 U.S. 128, 136, [] (1978), and not on the officer's actual state of mind at the time the challenged action was taken.").

Having determined that Officer Sweeney's initial encounter of Appellant was lawful, we consider Appellant's remaining argument concerning the legitimacy of the subsequent *Terry* frisk. Appellant claims that Officer Sweeney's "stop and frisk of [A]ppellant was unconstitutional as the officer merely saw [A]ppellant standing on a public sidewalk in the middle of the day and make a movement towards his waistband and, thus, did not observe unusual conduct which could lead [him] to reasonably conclude that criminal activity was afoot." Appellant's Brief at 12.

We begin with an examination of the relevant legal principles.

> If, during the course of a valid investigatory stop, an officer observes unusual and suspicious conduct on the part of the individual which leads him to reasonably believe that the suspect may be armed and dangerous, the officer may conduct a pat-down of the suspect's outer garments for weapons. In order to justify a frisk under *Terry*, the officer must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous. Such a frisk, permitted without a warrant and on the basis of reasonable suspicion less than probable cause, must always be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.

***Commonwealth v. E.M.***, 735 A.2d 654, 659 (Pa. 1999) (internal citations and quotation marks omitted).

In concluding Officer Sweeney's ***Terry*** stop and frisk was lawful, we find Appellant's argument ignores the applicable standards:

> In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. … Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

***Commonwealth v. Kemp***, 961 A.2d 1247, 1255 (Pa. Super. 2008) (*en banc*) (citations and quotation marks omitted). Here, Appellant's continued adjustment of his waistband, in conjunction with the behaviors of his cohorts and the Officer's training and knowledge that weapons are often concealed in waistbands, established a reasonable suspicion that Appellant might be carrying a weapon. ***See Foglia***, 979 A.2d at 361-62 (after encountering the defendant, the officer noticed that "[Foglia] touched his waist area and sat down on a stoop behind some females. The police officer was aware, based upon his experience with armed suspects, that weapons are often concealed in a person's waistband. Thus, Officer Scott had more than ample facts at his disposal to believe that [Foglia] was armed with a gun. … [Foglia] displayed hand movements consistent with custody of a weapon in his waistband, where such items are commonly hidden. As this latter action occurred before the patdown, it can be used to support the officer's actions.").

Because Officer Sweeney was justified in performing a **Terry** frisk, the suppression court properly denied Appellant's motion to suppress the firearm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: <u>10/19/2016</u>