J-A27024-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| ADAM BUTLER | |
| Appellee | No. 64 EDA 2017 |

Appeal from the Order entered November 29, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0004677-2015

BEFORE:  BOWES, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY STABILE, J.:                    **FILED FEBRUARY 22, 2019**

The Commonwealth appeals from the November 29, 2016 order of the Court of Common Pleas of Philadelphia County reversing the municipal court's order of May 5, 2015, and granting suppression in favor of Appellee, Adam Butler.  After review, we reverse the trial court's order, and reinstate Appellee's judgment of sentence.

The relevant factual and procedural background can be summarized as follows.  On May 29, 2014, at approximately 1:20 p.m., Police Officer Anthony Case was on duty in the high crime area of 2552 Page Street in Philadelphia, conducting routine checks based on numerous complaints of individuals stealing electricity from abandoned houses or houses in which they do not reside.  While traveling in his vehicle on Page Street, Officer Case saw Appellee, along with another male, sitting in front of a residence.  While in his

vehicle, Officer Case approached Appellee, asking him whether he lived at that residence. Appellee became irate, stating, "Constitutionally, you have no right to talk to me." N.T. Suppression, 9/10/14, at 15. Officer Case asked Appellee to calm down, as he had merely asked him whether he lived at that residence.

While still in his vehicle, Officer Case then asked Appellee to show him some identification. Appellee refused to do so, stating, "I don't have to show you my ID." *Id.* After this exchange, Appellee got up, started moving back and forth, while yelling and being otherwise so loud that he drew people out of their residences. While yelling, Appellee approached the officer's car quickly without being asked to do so. That in turn, prompted the officer, for his own safety, to get out of the vehicle. *See id.* at 16. Officer Case asked Appellee to stand back. "At this point, [Appellee and the officer were] standing outside the [police] car in the middle of the street." *Id.* Appellee was yelling, raising his arms, "starting to foam at the mouth," and refusing to give the officer his identification and his name. *Id.*

Officer Case then stated, "Look. If you live here or not, it's not a big deal. Even if you don't live here you can just be on your way. I don't want to make a big thing out of it." *Id.* at 17. The officer described what happened subsequently as follows:

> That's when [Appellee] started taking a bladed stance, and by that I mean a defensive stance, where he turns his shoulder, as he's concealing his backside.

At that point after seeing how many people were outside[,] I didn't want to have a situation where I was going to be in jeopardy, I called for more officers to take my spot.

[As two officers were coming up, Appellee] was going into his back rear right pocket. The two officers helped me, assisted me with controlling [Appellee] so he wasn't able to pull out what he had in his pocket.

We put him in custody for identification purposes. [One of the officers who came up to assist Officer Case], pulled [a black Pit Bull stun gun from Appellee's back rear right pocket. [The other officer pulled a very large Smith and Wesson cutting blade]. [Accordingly, Appellee was put under arrest and transported to the police headquarter].

N.T. 9/10/14, at 17-18.[1]

Appellee called as a witness, Julius Anthony McDonald, who testified that he resided at 2552 West Page Street, Philadelphia; that he was related by marriage to Appellee; and that Appellee, who was arrested outside his residence, had asked him and obtained his permission to use the electricity outside his residence.

The suppression court, in denying Appellee's motion to suppress, did not make formal findings of facts. However, it stated the following:

[The encounter] goes off the rails [] when it comes to an issue of officer safety and the officer testified concerning what he felt was a defensive stance and he was sitting in the car at this point. Caused him to get out of the car[.] . . . [O]nce that happened then the officer felt that he was in -- he had legitimate reason to

_____

[1] As a result, Appellee was charged with disorderly conduct and possession of a prohibited offensive weapon (*i.e.*, the stun gun).

make sure that [Appellee] was not armed. . . . [T]he officer had a legitimate concern about his safety and it turn out to be correct.

N.T. 9/10/14, at 41-42.[2]

Appellee filed an appeal to the Court of Common Pleas seeking a trial *de novo*. Subsequently, Appellee filed a motion for extraordinary relief seeking to amend his petition for trial *de novo* into a writ of *certiorari*, which the trial court granted. Reviewing the matter in the context of a writ of *certiorari*, the trial court found that the encounter started as a mere encounter and then turned into an illegal detention due to Officer Case's conduct. The trial court noted that nothing in the circumstances surrounding the interaction between the officer and Appellee justified detaining Appellee. The trial court also noted that Officer Case never checked to see if Appellee had permission to be at that address. The trial court concluded:

> The lack of an objective belief of criminal activity, the time of day, the repetitive and continued questioning of Officer Case and his show of force by exiting his patrol car and calling for backup, combined with his informing the Appellee that he suspects him of stealing electricity elevated the mere encounter to an *unjustified* investigatory detention[.]

Trial Court Opinion, 11/3/17, at 9 (emphasis in original). Accordingly, the trial court overruled the municipal court's order denying Appellee's motion to suppress. This appeal followed.

---

[2] After denying the motion to suppress, the municipal court found Appellee guilty of both charges and, on May 5, 2015, sentenced him to one to two years' incarceration.

An appellant convicted in Philadelphia's Municipal Court has two appellate options.

> Pennsylvania Rule of Criminal Procedure 1006(1)(a) provides that a defendant convicted in Philadelphia Municipal Court has the right to request either a trial de novo or file a petition for a writ of certiorari with the Philadelphia Court of Common Pleas. This Court has held that when a defendant files a petition for a writ of certiorari, the Philadelphia Court of Common Pleas sits as an appellate court.

> ***Commonwealth v. Coleman***, 19 A.3d 1111, 1118–19 (Pa. Super. 2011) (citations omitted). "A trial *de novo* gives the defendant a new trial without reference to the Municipal Court record; a petition for writ of certiorari asks the Common Pleas Court to review the record made in the Municipal Court." ***Commonwealth v. Menezes***, 871 A.2d 204, 207 n.2 (Pa. Super. 2005).

***Commonwealth v. Beaufort***, 112 A.3d 1267, 1269 (Pa. Super. 2015) (emphasis added).

Instantly, Appellee filed a petition for a writ of *certiorari* with the trial court, seeking review of the record made in the Municipal Court.

When reviewing an order denying of a motion to suppress, the Court of Common Pleas of Philadelphia County applies the same standard that the Superior Court applies in appeals from common pleas court orders denying motions to suppress. Specifically,

> [the court of common pleas] is bound by those of the suppression court's factual findings which find support in the record, but [the court of common pleas is] not bound by the [suppression] court's conclusions of law. When the suppression court's specific factual findings are unannounced, or there is a gap in the findings, the appellate court should consider only the evidence of the prevailing suppression party (here, [the Commonwealth]) and the evidence

of the other party (here, [Appellee]) that, when read in the context of the entire record, remains uncontradicted.

*Commonwealth v. Millner*, 888 A.2d 680, 685 (Pa. 2005) (citations omitted).  The scope of review from a suppression ruling is limited to the evidentiary record created at the suppression hearing.  *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013).[3]

In its analysis, the trial court inexplicably discounted some relevant facts for purposes of determining whether the officer had reasonable suspicion to detain and search Appellee.  For example, the trial court fails to mention that Appellee approached the officer's vehicle, quickly, without being asked to do so.  *See* N.T. 9/10/14, at 16.  As the officer noted, Appellee's sudden actions, caused him to be concerned about his safety.  *Id.*  In the same vein, the trial court fails to mention that at the time Appellee approached the officer, the officer was in the vehicle, alone, in a high crime area.  *Id*. at 16, 20-21.  The trial court also fails to mention that Appellee, who was irate throughout the encounter, was standing very close to the officer in the middle of the street, while a crowd of onlookers witnessed the scene.  The trial court fails to

---

[3] The Municipal Court failed to enter findings of fact and conclusions of law in accordance with Pa.R.Crim.P. 581(I).  The failure to do so, however, does not pose a substantial impediment to our meaningful and effective appellate review, as the facts and the reasons supporting the denial of Appellee's motion to suppress are otherwise readily apparent from the statements the suppression court made at the end of the hearing.  *See* N.T., 9/10/14, at 41-42.

mention that Appellee kept a "bladed" stance (*i.e.*, defensive stance) once he approached the officer, as if attempting to conceal his backside. **Id.** at 17. There is no mention in the trial court's analysis that Appellee reached back into his rear pocket, as other officers were arriving. **Id.** Finally, while the trial court seems to point to weaknesses in the officer's testimony, **see** Trial Court Opinion, 11/3/18, at 9,[4] the trial court overlooked one very important statement by the officer. Te officer summarized the reasons for the detention and search of Appellee as follows: "When my safety was in jeopardy after [Appellee] took the bladed stance and was reaching into his back right pocket[,] that's when it became a priority to see what he was searching for." N.T., 9/10/14, at 24.

It is accurate, as the trial court noted, that Officer Case asked Appellee for identification on multiple occasions. However, there is no indication that Appellee, at any time, took the requests as an order from the officer. Indeed, he continued to defy the officer by refusing to provide an identification, even refusing to give his name.

The trial court found that the officer's exiting of the vehicle amounted to a show of force. There is nothing in the record supporting that conclusion.

---

[4] "When asked to articulate what the suspicious activity was[,] Officer Case answered '[t]he way he was acting. He was screaming at police. He was causing a scene[.] [P]eople started coming out of their houses.' This court does not believe that any of this behavior rises to level of reasonable suspicion." Trial Court Opinion, 11/3/18, at 9 (quoting N.T. 9/10/14, at 25).

If anything, the record shows that Appellee was not impressed whatsoever by a show of force, as he kept yelling, raising his arms, and otherwise moving freely when interacting with the officer.

The trial court suggests that calling for back-up, and the arrival of two additional officers, was another indication that Appellee was not free to go. Again, the record shows that Officer Case was the only officer present at the time of the interaction with Appellee. Appellee was agitated, yelling, raising his arms, and suddenly decided to approach the officer's vehicle. If he were not free to go, as the trial court found, why was Appellee able to walk back and forth, approach the vehicle, and argue with the officer in the street? The trial court provides no authority for the proposition that a call for back-up or mere presence of police officers at a scene amounts to detention.

The trial court stated that the officer accused Appellee of stealing electricity. This fact is nowhere to be found in the record. The record shows that the officer repeatedly asked Appellee to show him an identification to learn whether he lived at that residence. However, at no point did the officer accuse Appellee of stealing electricity.

Finally, the trial court noted that the officer failed to check whether Appellee had permission to be at that residence. We reject the trial court's approach. A review of the record is based on what is in the record, not what is not or should have been in the record. Even if the occupant of the residence at issue here testified that Appellee was indeed authorized to use the

electricity, it is of no moment in the analysis whether the officer had the authority to detain Appellee based on the circumstances surrounding the encounter.

Based on our review of the record, as developed at the suppression hearing, and in light of our standard of review, we conclude that the interaction began as a mere encounter, but turned into an investigative detention when Officer Case conducted a pat down of Appellee. The issue is whether Appellee's actions justified his stop and frisk.

As noted above, Officer Case was driving in a high crime area, aware of reports of theft of electricity. Throughout the interaction with the officer, Appellee was visibly agitated, yelling so loud that other residents came out of their residences to check the situation. While the officer was alone in his vehicle, Appellee decided to approach the officer without being asked to do so. The officer was already concerned about his safety, not only because of Appellee's behavior and movements, but also because of the large crowd developing around the officer. While interacting with the officer, Appellee angled himself seemingly attempting to conceal his backside, and reached for the back pocket. At this point, for Officer Case "it became a priority" to determine whether Appellee was armed and to neutralize the threat of physical harm. N.T., 9/10/14, at 24. Consequently, the pat down was proper, and the trial court erred in concluding otherwise. *See Commonwealth v. Guzman*, 44 A.3d 688, 694-95 (Pa. Super. 2012) (following police officer's

initial, mere encounter with defendant, officer's subsequent frisk of defendant for weapons was justified under circumstances based on concerns for the officer's safety, where defendant, who was acting erratically, jumped out of his vehicle in a high crime area and repeatedly reached into his pockets while simultaneously screaming his innocence.).

We conclude that the trial court erred in overruling the suppression court's denial of Appellee's motion to suppress physical evidence. Accordingly, we reverse the order of the trial court granting Appellee's motion to suppress, and reinstate Appellee's judgment of sentence.

Order reversed. Judgment of sentence reinstated. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/19