J-A08036-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

COMMONWEALTH OF PENNSYLVANIA,   :     IN THE SUPERIOR COURT OF
                        :           PENNSYLVANIA
         Appellee         :
                        :
          v.            :
                        :
DARYL ANTHONY BAER,        :
                        :
         Appellant     :     No. 729 MDA 2014

Appeal from the Judgment of Sentence Entered March 13, 2014
in the Court of Common Pleas of York County,
Criminal Division, at No(s): CP-67-CR-0006201-2013

BEFORE:   SHOGAN, WECHT, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:   **FILED JULY 10, 2015**

Daryl Anthony Baer (Appellant) appeals from the March 13, 2014 judgment of sentence of one year of probation imposed following his conviction for possession of drug paraphernalia.[1] On appeal, Appellant challenges the denial of his pre-trial suppression motion. We affirm.

The trial court offered the following factual and procedural history of the case.

> In the early morning hours of April 6, 2013, Officer David Kahley was on routine patrol outside of a Turkey Hill gas station in West York, Pennsylvania. While on patrol he observed a vehicle enter the parking lot of a church, which he knew was closed. He observed two people exit the car and head towards the adjoining alley. At this point, Officer Kahley drove into the alley to see which way the individuals were heading, and he

---

[1] On March 12, 2014, Appellant also was sentenced to 75 days' incarceration at the above docket number for his conviction of the summary offense of driving while operating privileges were suspended or revoked.

*Retired Senior Judge assigned to the Superior Court.

observed them quickly walk into the parking lot of a business, which, like the church, was also closed. Without activating his emergency lights or shining his spotlight, Officer Kahley approached the pair and asked where they were going. They responded that they were heading to the female's apartment, which was located on the 1400 block of Market Street, the opposite direction of the way the pair was walking.

Because of the time of night and the area, which Officer Kahley knew to be high crime, plus the inconsistency between the pair's conduct and their statements, the officer asked them for identification. He was able to identify both individuals; the man was identified as Daryl Baer, the Appellant, and the other individual, a female, was identified as Alexis Bohr. Officer Kahley discovered that Ms. Bohr had a warrant out for her arrest, so he placed her in custody. He also discovered that the Appellant's license was suspended for an earlier DUI. Sometime after Officer Kahley began talking to the Appellant, but before the Appellant was placed in custody, another officer arrived just to assist Officer Kahley if he should need it.

After placing Ms. Bohr in custody, Officer Kahley testified that he performed a pat-down of the Appellant. During the suppression hearing, where the stop and subsequent evidence were challenged, Officer Kahley stated that the Appellant kept putting his hands in his pockets, even after Officer Kahley asked him to stop. At this point, Officer Kahley felt it was a safety concern, and this is what led to him patting down the Appellant. While patting down the Appellant, Officer Kahley stated that he felt two objects in the Appellant's left breast pocket of his coat. He testified that he immediately knew the objects were hypodermic needles, and that he asked the Appellant if they were needles, to which the Appellant responded "I don't know." Officer Kahley asked the Appellant if he could remove the objects and the Appellant said yes. The objects were hypodermic needles.

The Appellant was taken into custody for possession of drug paraphernalia and Officer Kahley read the Appellant his *Miranda*[2] rights. The Appellant appeared to understand his

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

- 2 -

rights, and according to Officer Kahley, admitted that the needles were his, they were used for shooting up heroin, and that he had used heroin four days earlier. The Appellant also told Officer Kahley that he was the one driving the vehicle that he and Ms. Bohr were seen exiting. The Appellant was taken to Central Booking and the Appellant's vehicle was searched and towed. During that search of the vehicle, a purse, which contained a small black bag, was found on the passenger seat. The black bag contained numerous hypodermic needles, 29 bags of heroin, and a packet of Suboxone, which is commonly used in treating heroin addicts.

At the trial, Officer Kahley testified that standard procedure regarding testing needles is, because of dangers associated with them, to take pictures of the needles and then destroy them. Further, all of the labs that Officer Kahley was aware of do not even accept needles for testing unless some kind of exigent circumstances exist. Officer Kahley did not fingerprint the needles, as that is not standard procedure in cases such as this. The parties stipulated to the fact that the Pennsylvania State Police, Bureau of Forensic Services, received the evidence, with the exception of the hypodermic needles, found in the purse. The lab found that the residue contained in the bags was heroin.

On cross-examination … Officer Kahley admitted that he made some mistakes on the night of April 6, 2013. The officer's Affidavit of Probable Cause did not make mention of finding two needles on the Appellant's person. The affidavit also did not mention any statements that the Appellant made to the officer. Lastly, Officer Kahley admitted that he took pictures of the contraband found in the purse, but did not take pictures of the needles found on the Appellant. However, on redirect Officer Kahley clarified that he does not put every single detail in the Affidavit of Probable Cause. Further, his supplemental incident report, which was drafted just after the Appellant was taken to Central Booking, did state that two needles were found on the Appellant, and did mention the Appellant's incriminating statements.

Trial Court Opinion, 7/30/2014, at 2-4 (citations omitted).

Prior to trial, Appellant filed an omnibus pre-trial motion in which he sought to suppress the needles, the evidence of Appellant's suspended license, and Appellant's incriminating statements. After a hearing, the trial court denied the motion. Appellant proceeded to trial and was convicted and sentenced as indicated above. Appellant timely filed a post-sentence motion and a notice of appeal following that motion's denial. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents five questions for this Court's review:

1. Did the lower court err when it determined that the initial encounter by the police officer was a mere encounter where the police officer did not observe any evidence of criminal activity and did not have reasonable suspicion to stop or detain the Appellant by pulling his marked police cruiser up to the Appellant, exiting his marked vehicle and talking to the Appellant with a backup unit arriving in less than four (4) minutes after the initial encounter thereby surrounding the Appellant in a show of force?

2. Did the suppression/trial court err in finding that the officer possessed reasonable suspicion to effectuate an investigatory detention where the officer gave no articulable facts that the Appellant was engaging in criminal activity when the officer viewed Appellant walking in a parking lot and the Appellant told the officer of his destination?

3. Did the suppression/trial court err in finding that the officer possessed a reasonable belief that the Appellant was presently armed and dangerous to justify a "*Terry* Frisk"[3] of the Appellant which occurred after the officer ran Appellant's license and found no outstanding warrants?

_____

[3] *Terry v. Ohio*, 392 U.S. 1 (1968).

4.      Did the suppression/trial court err in refusing to suppress the fruits of the investigatory detention where the seizing police officer had no reasonable suspicion to detain, nor probable cause to arrest Appellant at the instant when the seizing officer took Appellant's license and ran the license for a warrant check?

5.      Did the suppression/trial court err in refusing to suppress the fruits of the "*Terry* Frisk" where the frisking/seizing officer exceeded the scope of the "*Terry* Frisk" when the contraband was immediately apparent to the officer that the contraband was not a weapon and the officer preceded [*sic*] to manipulate/pinch the object until he believed it to be contraband?

Appellant's Brief at 2-3 (suggested and trial court answers omitted).

We consider Appellant's questions mindful of the following standard of review.

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.   Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.   Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.   Thus, the conclusions of law of the court[] below are subject to our plenary review.

*Commonwealth v. Perel*, 107 A.3d 185, 188 (Pa. Super. 2014) (quoting

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010)).

We begin our examination of Appellant's claims of error by reiterating the applicable legal principles.

> Interaction between citizens and police officers, under search and seizure law, is varied and requires different levels of justification depending upon the nature of the interaction and whether or not the citizen is detained. The three levels of interaction are mere encounter, investigative detention, and custodial detention. A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. A mere encounter does not carry any official compulsion to stop or respond to police, and as a result, does not need to be supported by any level of suspicion. In contrast, an investigative detention carries an official compulsion to stop and respond. The detention is temporary, but it must be supported by specific and articulable facts creating a reasonable suspicion that the suspect is engaged in criminal activity. The test for reasonable suspicion is an objective one: … whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. Regarding the stop, a police officer may, short of an arrest, conduct an investigative detention if he has a reasonable suspicion, based upon specific and articulable facts, that criminality is afoot. The assessment of reasonable suspicion, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability. Finally, an arrest or custodial detention must be supported by probable cause.

> To determine if an interaction rises to the level of an investigative detention, *i.e.*, a **Terry** stop, the court must examine all the circumstances and determine whether police action would have made a reasonable person believe he was not free to go and was subject to the officer's orders. To guide this crucial analysis, the United States Supreme Court has devised an objective test entailing whether, in view of all surrounding circumstances, a reasonable person would believe he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority,

the citizen-subject's movement has in some way been restrained. No single factor should control this determination, and courts must examine the totality of the circumstances when reaching a conclusion as to whether a seizure occurred.

*Commonwealth v. Guzman*, 44 A.3d 688, 692-93 (Pa. Super. 2012) (internal citations and quotation marks omitted).

Although Appellant's brief poses five separate questions, he makes only two arguments: (1) that Officer Kahley's interaction with Appellant constituted an investigative detention unsupported by reasonable suspicion, and (2) that the *Terry* frisk was unjustified and exceeded the scope of an acceptable frisk. Appellant's Brief at 12, 24. We will address Appellant's arguments in a corresponding fashion.

Appellant first argues that his interaction with the police was, from the start, an investigative detention:

in light of the totality of the circumstances, Officer Kahley's conduct of pulling behind [Appellant] and his companion in the early morning hours, shining his headlights on them then exiting his vehicle in full police uniform and calling in a person stop thereby having a second officer pull up in his marked police cruiser, is more than a mere encounter and shows that [Appellant's] liberty was restrained.

Appellant's Brief at 18. Appellant further argues that Officer Kahley lacked reasonable suspicion to detain Appellant, because he "never witnessed [Appellant] engage in any activity that would be characterized as criminal." *Id.* at 22.

The trial court[4] determined that Officer Kahley's questioning of Appellant and request for his identification was a mere encounter, largely on the basis of our Supreme Court's opinion in **Commonwealth v. Au**, 42 A.3d 1002 (Pa. 2012). In that case, the police officer initiating the encounter did not "activate the emergency lights on his vehicle; position his vehicle so as to block the car that [Au] was seated in from exiting the parking lot; brandish his weapon; make an intimidating movement or overwhelming show of force; make a threat or a command; or speak in an authoritative tone." **Id.** at 1008. Although the officer in **Au** used his headlights and a flashlight, "this was in furtherance of the officer's safety, and we conclude it was within the ambit of acceptable, non-escalatory factors." **Id.** Under the circumstances present, "a request for identification is not to be regarded as escalatory in terms of the coercive aspects of a police-citizen encounter." **Id.** at 1007. Accordingly, the Court held that "the arresting officer's request for identification did not transform his encounter with [Au] into an unconstitutional investigatory detention." **Id.** at 1009.

As in **Au**, Officer Kahley did not activate the emergency lights on his vehicle when initially approaching Appellant; nor did he block Appellant's movements, brandish his weapon, or make any threats or commands. Therefore, we conclude that Officer Kahley's initial contact with Appellant

---

[4] The Rule 1925(a) opinion before us was authored by the trial court, not by the suppression court.

was a mere encounter, and his request for Appellant's identification did not escalate it to an investigatory detention.

It was not until Officer Kahley retained possession of Appellant's identification card that the mere encounter became an investigative detention. *See Commonwealth v. Hudson*, 995 A.2d 1253, 1259 (Pa. Super. 2010) ("Officer Gonzalez effectuated an investigative detention of Hudson at the time that Officer Gonzalez took and maintained possession of Hudson's identification. In such a situation, no reasonable person would have felt free to terminate the encounter and depart the scene."). However, we agree with the trial court that, by the time Officer Kahley requested Appellant's identification, he had the reasonable suspicion necessary to conduct an investigative detention. *See* Trial Court Opinion, 7/30/2014, at 9 ("The inconsistency between Appellant's statements and actions, along with the time of night and the location, a high crime area, would have given a reasonable officer reasonable suspicion that criminal activity was afoot.").

Appellant claims that Officer Kahley described no criminal activity; rather, he contends, the actions of Appellant and Ms. Bohr, "namely walking away from a vehicle and answering questions, are perfectly consistent with innocent behavior[.]" Appellant's Brief at 23. Appellant's argument ignores the applicable standards:

> In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered.

… Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Kemp*, 961 A.2d 1247, 1255 (Pa. Super. 2008) (*en banc*) (citations and quotation marks omitted).

Based upon the totality of the circumstances, Officer Kahley had reasonable suspicion to investigate Appellant and his companion further. *See*, *e.g.*, *Commonwealth v. Carter*, 105 A.3d 765, 774 (Pa. Super. 2014) (*en banc*) (holding officers had reasonable suspicion when they observed Carter, in a high-crime area, at night, attempt to conceal from the officers a bulge in his coat pocket).

Having determined that Officer Kahley's initial encounter and later detention of Appellant were valid, we consider Appellant's remaining arguments concerning legitimacy of the subsequent *Terry* frisk. We begin with an examination of the relevant legal principles.

If, during the course of a valid investigatory stop, an officer observes unusual and suspicious conduct on the part of the individual which leads him to reasonably believe that the suspect may be armed and dangerous, the officer may conduct a pat-down of the suspect's outer garments for weapons. In order to justify a frisk under *Terry*, the officer must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous. Such a frisk, permitted without a warrant and on the basis of reasonable suspicion less than probable cause, must always be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.

- 10 -

***Commonwealth v. E.M.***, 735 A.2d 654, 659 (Pa. 1999) (internal citations and quotation marks omitted).  Additionally,

> In [***Minnesota v. Dickerson***, 508 U.S. 366, 375 (1993)], the U.S. Supreme Court legitimized the seizure of contraband discovered during the scope of a ***Terry*** frisk where the officer feels an object whose contour or mass makes its criminal character immediately apparent.  However, noting that the officer in ***Dickerson*** "determined that the lump was contraband only after 'squeezing, sliding and otherwise manipulating the contents of the defendant's pocket'—a pocket which the officer already knew contained no weapons," the Court held that:
>
>> ... the officer's continued exploration of respondent's pocket after having concluded that it contained no weapon was unrelated to "[t]he sole justification of the search [under ***Terry***: ] ... the protection of the police officer and others nearby."  It therefore amounted to the sort of evidentiary search that ***Terry*** expressly refused to authorize ...

***Commonwealth v. Griffin***, --- A.3d ---, 2015 WL 2193891 at *4 (Pa. Super. filed May 12, 2015) (quoting ***Commonwealth v. Graham***, 721 A.2d 1075, 1081 (Pa. 1998)) (citations omitted).

Appellant claims that Officer Kahley failed to articulate specific facts to establish that he reasonably inferred that Appellant was armed and dangerous.  Appellant's Brief at 27-28.  Even if the frisk was justified, Appellant continues, Officer Kahley was not justified in seizing the hypodermic needles because the incriminating nature of the items was not immediately apparent.  ***Id.*** at 28-29.  Therefore, Appellant argues, the

needles were obtained unlawfully, and the fruits of the search should have been suppressed. *Id.* at 30.

At the suppression hearing, Officer Kahley testified that, after Ms. Bohr was taken into custody and identified Appellant as the driver of the car, he noticed that Appellant "was putting his hands in his pockets several times, which I continued to tell him to remove his hands from his pockets. And it started -- became a safety concern to me and we patted him down." N.T., 11/22/2013, at 10. *See also id.* at 18 (noting that he was not initially concerned, but became increasingly fearful that Appellant had weapons when Appellant continued to put his hands in his pockets after he told him to stop doing so). We agree with the trial court that this testimony was sufficient to justify a *Terry* frisk. *See*, *e.g.*, *Commonwealth v. Scarborough*, 89 A.3d 679, 684 (Pa. Super. 2014) (holding *Terry* frisk was justified when Scarborough kept his hand in his pocket after police directed him to remove it, as such conduct suggested that Scarborough may have had a weapon on his person).

Next, Officer Kahley testified that, during the pat down, "I felt two items in his left chest coat pocket, which I immediately recognized to be hypodermic needles." *Id.* at 10. On cross-examination, he offered greater detail about the frisk:

> Q: How could you tell the difference on the outside of a coat between a needle and let's say a pen?

A:     I could feel the object that was thin enough and had bumps on the bottom part that's not consistent with a pen.

Q:     Did that require you to manipulate that object to feel and tell what it is?

A:     I think since I felt it, I sort of would have just grabbed it to see that it was a thin object and that's when I felt that it wasn't a pen.

Q:     Well, so when you felt it all you could feel a thin object and you dropped it from there.  You didn't touch the object to determine what exactly it was?

A:     I wasn't running my hands along it and really wasn't manipulating.  I just felt there was an object there and more so tried to pinch it to see what kind of object it was.  I didn't continue much more than that to determine whether or not it could have been something more.

Q:     But when you felt it at first you knew it wasn't a weapon correct?

A:     I didn't believe it was a weapon, such as a knife or firearm.

Q:     All right.  Then after that you pinched it anyhow knowing it wasn't a weapon?

A:     I wasn't sure at first.

Q:     Wasn't sure what?

A:     If it could have been a knife or something more.  Once I felt it was thinner, then I believe[d] it wasn't a knife and more so of drug paraphernalia.

N.T., 11/22/2013, at 19-20.

Appellant claims that Officer Kahley exceeded the permissible scope of

a **Terry** frisk when he pinched Appellant's coat, as his testimony evidences

- 13 -

that it was not immediately apparent during the initial pat down that Appellant possessed contraband. Appellant's Brief at 28-29. We disagree.

"**Once the initial pat-down dispels the officer's suspicion that the suspect is armed**, any further poking, prodding, squeezing, or other manipulation of any objects discovered during that pat-down is outside the scope of the search authorized under *Terry*." *Graham*, 721 A.2d at 1082 (emphasis added). Here, viewing the evidence in the light most favorable to the Commonwealth, Officer Kahley's pinching of Appellant's outer garment occurred **before** he had confirmed that Appellant was unarmed, and was done for the specific purpose of ruling out the possibility that it was a weapon. Therefore, Officer Kahley's testimony was sufficient to establish a proper seizure under the plain feel doctrine. *See*, *e.g.*, *Commonwealth v. Pakacki*, 901 A.2d 983, 989 (Pa. 2006) (holding plain feel doctrine applicable when trooper, during a *Terry* frisk "felt an object which he knew from his experience in law enforcement to be a marijuana pipe").

Because Officer Kahley was justified in performing a *Terry* frisk, and because his seizure of the contraband was permissible under the plain feel doctrine, the suppression court properly denied Appellant's motion to suppress the hypodermic needles.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 7/10/2015