J-S21031-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,     :     IN THE SUPERIOR COURT OF
    :        PENNSYLVANIA
           Appellee     :
    :
           v.     :
    :
JAMIL LUTE JONES,     :
    :
           Appellant     :     No. 1329 WDA 2016

Appeal from the Judgment of Sentence July 27, 2016
in the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-26-CR-0002076-2015

BEFORE:     LAZARUS, DUBOW, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED JUNE 16, 2017**

Jamil Lute Jones (Appellant) appeals from the judgment of sentence imposed on July 27, 2016, after he was found guilty of one count of firearms not to be carried without a license. We affirm.

After being charged with the aforementioned crime, Appellant filed an omnibus pre-trial motion to suppress evidence. We summarize the following facts based upon Officer Cheryl Frey's testimony at the suppression hearing. During her shift on July 5, 2015, Officer Frey saw Appellant, two other adults and a small child crossing the street on foot. N.T., 11/7/2016, at 5-7. Appellant was wearing a red vest. *Id.* at 7. Officer Frey recognized Appellant's face but could not recall his name. *Id.* at 13. She thought his name might be Laquan Martin. *Id.* During the roll call prior to her shift, the names of Appellant and Laquan Martin were listed as having active warrants.

_____
*Retired Senior Judge assigned to the Superior Court.

*Id.* at 7, 13. Officer Frey got out of her vehicle and asked Appellant for his identification. *Id.* at 8. Appellant asked Officer Frey why she was stopping him, and Officer Frey responded that she believed there was a warrant for his arrest. *Id.* Appellant took off his vest and handed it to a friend before giving Officer Frey his identification. *Id.* After confirming through dispatch that there was a warrant, Officer Frey handcuffed Appellant and retrieved Appellant's vest from his friend, who still had the vest draped over his arm. *Id.* at 8-9.

While Officer Frey was walking Appellant back to the vehicle, Appellant asked Officer Frey why she took the vest, claiming it belonged to his friend. *Id.* at 23-24. Officer Frey told him she was suspicious of why he would hand it to his friend when all she wanted was his identification. *Id.* at 12, 18, 23-24. Appellant then told Officer Frey that there was a firearm in the vest. *Id.* at 9, 23-24. According to Officer Frey, she did not ask Appellant any questions to prompt this statement. *Id.* at 11, 22. Officer Frey placed Appellant in the back of her vehicle and laid the vest on the ground. *Id.* at 9. When back-up officers arrived, they retrieved a .380 automatic Ruger from the vest and unloaded it. *Id.* at 9-10.

In the written suppression motion, Appellant had argued, *inter alia*, that Officer Frey did not have probable cause to search or seize the vest Appellant had been wearing prior to his arrest. Motion, 10/27/2015, at ¶¶ 15-17. During the suppression hearing, however, Appellant confined his

argument to the issue of whether Officer Frey had reasonable suspicion to stop Appellant in the first place or to call dispatch to determine if he had a warrant, arguing that in both cases she did not. N.T., 3/2/2016, at 24-28. Following Officer Frey's testimony, the suppression court denied the motion, stating that it found Officer Frey's testimony to be entirely credible. *Id.* at 29-30.

A jury trial was held on March 21 and 22, 2016, and Appellant was found guilty of the aforementioned charge.[1] On July 27, 2016, Appellant was sentenced to two-and-a-half to six years of incarceration. Following the denial of his post-sentence motion, Appellant timely filed a notice of appeal. Appellant, the suppression court, and the sentencing court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises two issues.

[1] Whether the trial court erred in denying [] Appellant's omnibus pretrial motion to suppress evidence?

[2] Whether [] Appellant's sentence is manifestly excessive, clearly unreasonable and inconsistent with the objective of the Pennsylvania sentencing code?

Appellant's Brief at 4.

We consider the following regarding Appellant's first issue.

---

[1] He was also found guilty of one count of persons not to possess, use, manufacture, control, sell or transfer firearms, but the trial court granted Appellant's motion for judgment of acquittal on this charge at the time of sentencing. N.T., 7/27/2016, at 9-10.

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

**Commonwealth v. Prisk**, 13 A.3d 526, 530 (Pa. Super. 2011) (quoting

**Commonwealth v. Williams**, 941 A.2d 14, 26–27 (Pa. Super. 2008) (*en*

*banc*)).

On appeal, Appellant argues that Officer Frey lacked reasonable

suspicion to stop him because she had no reasonable belief that criminal

activity was afoot. Appellant's Brief at 9. According to Appellant, Officer

Frey's "hunch" that Appellant was one of two people who had active

warrants was insufficient to justify the initial stop of Appellant; therefore,

the firearm that was discovered later must be suppressed as fruit of the

poisonous tree. *Id.*

In determining the propriety of the interactions between Officer Frey

and Appellant, the following principles are relevant.

The Fourth Amendment of the Federal Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures. In Fourth Amendment jurisprudence, there are three categories of interactions between citizens and the police:

The first [category] is a "mere encounter" (or request for information) which need not be supported by any level of

suspicion[], but carries no official compulsion to stop or respond. The second, an "investigative detention," must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

**Commonwealth v. Parker**, __ A.3d __, at *3 (Pa. Super. 2017) (citations omitted).

In evaluating the level of interaction, courts conduct an objective examination of the totality of the surrounding circumstances. We are bound by the suppression court's factual findings, if supported by the record; however, the question presented—whether a seizure occurred—is a pure question of law subject to plenary review.

The totality-of-the-circumstances test is ultimately centered on whether the suspect has in some way been restrained by physical force or show of coercive authority. Under this test, no single factor controls the ultimate conclusion as to whether a seizure occurred—to guide the inquiry, the United States Supreme Court and [the Pennsylvania Supreme] Court have employed an objective test entailing a determination of whether a reasonable person would have felt free to leave or otherwise terminate the encounter. [W]hat constitutes a restraint on liberty prompting a person to conclude that he is not free to "leave" will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs.

**Commonwealth v. Lyles**, 97 A.3d 298, 302–03 (Pa. 2014) (citations omitted).

Here, the suppression court determined that Officer Frey's initial stop of Appellant to request identification was a permissible **Terry**[2] stop due to her specific recognition of Appellant as someone with a warrant, even if she

---

[2] **Terry v. Ohio**, 392 U.S. 1 (1968).

mismatched his face with the name of someone else. Furthermore, the suppression court found that Officer Frey legally continued to detain Appellant when she called dispatch to confirm that he had a warrant. N.T., 3/2/2016, at 29-30.

While "the mere request for identification does not in itself create an investigatory detention," an encounter becomes an investigatory detention when "the request for identification is coupled with a restraint of liberty, physical force or show of authority." *Commonwealth v. Baldwin*, 147 A.3d 1200, 1204 (Pa. Super. 2016). Officer Frey informed Appellant that she was requesting his identification because she believed he had a warrant out for his arrest. In that circumstance, a reasonable person would not feel free to leave. *See Parker*, ___ A.3d at *6 (holding that when a police officer requests identification along with a suggestion that the person is suspected of criminal wrongdoing, the situation rises to the level of an investigatory detention). Likewise, a reasonable person would not feel free to leave while a police officer possesses the person's identification to check for outstanding warrants. *See Commonwealth v. Hudson*, 995 A.2d 1253, 1259 (Pa. Super. 2010) ("Officer Gonzalez effectuated an investigative detention of Hudson at the time that Officer Gonzalez took and maintained possession of Hudson's identification. In such a situation, no reasonable person would have felt free to terminate the encounter and depart the scene."). Thus, Officer Frey needed to have reasonable suspicion that criminal activity was

afoot to justify her initial stop of Appellant and his detention while she investigated her suspicion that he had a warrant. **See Parker**, __ A.3d at *6.

To effectuate an investigative stop, law enforcement officers must have "a particularized and objective basis for suspecting the particular person stopped of criminal activity" and the officer must be able to "articulate [the basis as] something more than an inchoate and unparticularized suspicion or hunch." **Commonwealth v. Carter**, 105 A.3d 765, 768–69 (Pa. Super. 2014). We agree with the trial court that Officer Frey's specific recognition of Appellant as someone with an active warrant, even if she initially mismatched his face with the name of someone else, constituted reasonable suspicion justifying the initial stop to obtain Appellant's identification and the brief detention to confirm that he did, indeed, have an active warrant. Thus, because the detention of Appellant was lawful, the trial court did not err by failing to suppress the firearm that was later discovered after the detention.

Turning to Appellant's second issue regarding the discretionary aspects of his sentence, we observe the following.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. An appellant challenging the discretionary aspects of his [or her] sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P.

902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

*Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (some citations omitted).

Here, Appellant filed a timely post-sentence motion and a notice of appeal, and included a statement pursuant to Rule 2119(f) in his brief. We now consider whether he has raised a substantial question for our review.

In his Rule 2119(f) statement, Appellant alleges the sentencing court failed to consider the factors set forth in 42 Pa.C.S. § 9721(b). Appellant's Brief at 7. "An averment that 'the trial court failed to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense and the rehabilitative needs of Appellant, as 42 Pa.C.S.[ ] § 9721(b) requires[,]' presents a substantial question for our review…." *Commonwealth v. Derry*, 150 A.3d 987, 992 (Pa. Super. 2016) (citing *Commonwealth v. Riggs*, 63 A.3d 780, 786 (Pa. Super. 2012)).

However, in the argument section of his brief, Appellant contends that the trial court failed to consider adequately mitigating factors in the record, and thus his sentence is excessive and an abuse of discretion. Appellant's Brief at 11. This claim does not raise a substantial question. **See** *Commonwealth v. Dodge*, 77 A.3d 1263, 1272 n.8 (Pa. Super. 2013)

("[A]rguments that the sentencing court failed to consider the factors proffered in 42 Pa.C.S. § 9721 does present a substantial question [but] a statement that the court failed to consider facts of record, though necessarily encompassing the factors of [Section] 9721, [does not]."). Moreover, the claim included in his Rule 2119(f) statement is not developed in his argument and is waived.

Nevertheless, even if Appellant had satisfied the requirements for review of his discretionary aspects of sentencing claim, we would conclude that he would not be entitled to relief because the trial court had the benefit of a pre-sentence investigation report. *See Commonwealth v. Boyer*, 856 A.2d 149, 154 (Pa. Super. 2004) ("[W]here the sentencing judge had the benefit of a presentence investigation report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors."). Moreover, the sentencing court articulated specific reasons for sentencing Appellant as he did, including the significant problem of gun violence in Appellant's community, Appellant's chronic alcohol and drug use history, and Appellant's testing positive for alcohol, THC, cocaine and amphetamines while under court supervision, all of which indicate that the sentencing court considered the protection of the public, the gravity of the underlying offense and the rehabilitative needs of Appellant in fashioning the sentence. Sentencing Court Opinion, 11/3/2016, at 5.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  6/16/2017